The next case is John Capriole versus Uber Technologies, Inc. at all. Appeal number 201386. Attorney Liz Riordan, please introduce yourself for the record and proceed with argument. Yes, good morning again, Your Honors. Shannon Liz Riordan for the plaintiffs. So this appeal raises almost all the same issues as the appeal that you just heard, so I'm happy to answer any more of the questions that you have. This appeal is our appeal of the district court's denial of our motion for preliminary injunction, which was filed prior to the pandemic, and it concerned the fact that Uber's failure to abide by any of the Massachusetts wage laws by misclassifying its drivers as independent In many ways, there are some similar issues, but there is a preliminary issue, which is whether the fact that the case was transferred to California and then final judgment was entered by the California District Court and that in the normal course would mean that the preliminary injunction issue is no longer alive and therefore there's no jurisdiction in Massachusetts. Could you please address that issue? Yes, I will, and Your Honors, I just remembered I neglected to ask if I could reserve three minutes for rebuttal. Yes, you may. Thank you so much. Yes, so our appeal was filed before the case was transferred to California, so I believe... What difference does that make? Well, the difference is that this court had jurisdiction before the case was transferred. Okay, let's start at the other end. Do you agree that the entry of a final judgment of dismissal in the ordinary course would mean that there is no longer a live preliminary injunction issue left to be appealed? Well, I think it depends. I think ordinarily when the case stayed in the same jurisdiction, the appeals would merge and would be heard together, but due to this unusual circumstance, this appeal was filed in this court and our appeal of the final dismissal was lodged in but we don't have the question of whether the Ninth Circuit has jurisdiction. We only have the question of whether this court has jurisdiction. Yes, I believe, Your Honors, that in our Ninth Circuit appeal, which I argued last October, and it's pending there, I believe Uber argued that we couldn't argue about the denial of the original preliminary injunction motion because that was pending here, so I would argue that we need to be able to pursue that appeal somewhere, and I believe it agreed in the papers in California that that appeal had been lodged here and was pending here. Okay, we'll take a look at that, but let's go back to does the First Circuit have jurisdiction now that in the case that was transferred to California, a final judgment was entered? Okay, you said the distinction is that you took your notice of appeal before, and I said, why does that matter? Because under the Supreme Court case law, that doesn't seem to matter at all. Well, I do think the plaintiffs should be able to pursue their appeal somewhere, and I think the fact that a later order may have entered that may also be appealable does not deprive this court of jurisdiction from hearing this appeal that was properly filed here. Okay, so you're attacking the foundational premise of the argument that we no longer have jurisdiction. Correct. All right. Go ahead, Judge Keanu. Relatedly, what about just race judicata? Under the restatement of judgments, if you've got two actions going in two courts and final judgments entered in one of them, that's preclusive in the other, even pending an appeal. So, I'm having trouble seeing why the final judgment isn't preclusive. Well, whatever happened on final judgment, the plaintiffs should still have the opportunity to challenge an earlier order that happened in the case, which is what we're doing with this car accident in Massachusetts, and I sued you out of that same accident, say, in Maine. Whichever one got to judgment first would then preclude a judgment in the other, preclude for the litigation of the other until the first one was flipped. At least that's the way I understand it. Well, one possibility then might be to see what the Ninth Circuit does with the appeal that has already been filed there and pending there, and if there is a reversal, then perhaps that might... Well, then there'd be no judgment that would be preclusive on us. Correct, and I expect the Ninth Circuit is likely to rule before this court would rule, just given the timing that that appeal was argued several months ago. Oh, you are quite an optimist. My experience has been typically they rule within a few months. It's already been a little longer than that, but given that that was argued months before this is being argued, that would be my suspicion. One possibility is this court could just stay this matter until they rule, if that is a concern, but again, I don't see why this appeal shouldn't be able to proceed regardless of what happens with that case. Okay, so Judge Cleata has argued by analogy to Res Judicata principles, to which you say, oh, stay this and wait and see what the Ninth Circuit does, but I was asking you about an entirely different line, which is exactly what was argued to us by Uber, which is even post-transfer, given that final judgment had entered, we no longer have appeal. So, if I could get you back to that. Okay, you do cite an opinion written by Judge Torea, but it is factually extremely different than this situation. So, what is your argument? Four minutes remaining. Um, your honors, I really want to rest on our papers with respect to this issue, and I hope that I can address some of the other issues in this appeal. Certainly, that's your choice. Go ahead. Okay, thank you, your honors. So, once again, as I started to argue before in the previous lift appeal that you heard, this denial of preliminary injunction raises an extraordinarily important issue with respect to Uber, which unleashed an entire industry of companies that have taken the liberty of thumbing their nose at the law by depriving their entire driver workforce of all protections of the Massachusetts wage laws since its inception in Massachusetts. And the reason it has been able to get away with this is by using its arbitration clause. And, yes, Justice Kayada, the individual drivers could pursue individual arbitrations and try to get back some money and maybe even try to get individual injunctions that would cause them individually to be classified as employees. That is not going to take care of the massive public harm that is being caused by this company completely ignoring Massachusetts wage laws. And as a practical matter, as we all know, thousands of drivers are never actually going to be able to vindicate their rights in arbitration. But the fact that arbitration has been enforced in so many different contexts and has been upheld by the U.S. Supreme Court over the years, the Supreme Court in this court has never faced a situation in which a company has strategically used arbitration so long and so repeatedly and so aggressively to prevent a court from ever ruling on the fact that its entire business operation is utterly illegal and that all of its drivers are being deprived of all of their which is illegal under a rule of versus coverall through having to pay their own expenses for their cars. And this harms the drivers who lack the basic safety net of our of our commonwealth's wage and hour laws. And it also harms the public, which has to fund these drivers through public assistants who if they can't afford and who have to bear the cost as taxpayers to fund the fact that this this whole company is just ignoring the laws and has created a race to the bottom and made it impossible for competitors to compete by classifying their drivers as employees, which would just be more expensive for the companies if they actually had to pay for those wage protections. And again, I was struck that the AG filed a brief below but then didn't with us on either of these appeals. Does the AG have the ability to avoid the arbitration issue by bringing an action on behalf of the on behalf of the state or on behalf of the drivers? Well, well, yes, I will say the AG took an extraordinary step of filing these amicus briefs below and I think they thought that because they had already done amicus briefs, they were in the record of these cases. So I frankly didn't ask them to resubmit them for this court. And yes, the Attorney General has brought cases against Uber and Lyft finding that they have violated Massachusetts law, which only reaffirms the public importance of this. And again, the question about whether or not Massachusetts law allows for a public injunction, the Massachusetts Attorney General's office has now agreed with us that it does and the AG's office gets deference recognizing that private enforcement goes public enforcement. Thank you. Thank you. At this time, Attorney Liz Wherden, please mute your device. And Attorney Evangelist, you can please unmute and reintroduce yourself and begin oral argument. May it please the court. Deanna Evangelist on behalf of the Uber defendants. The court should dismiss this appeal as moot. After the district court transferred this case, the Northern District of California dismissed the case and entered final judgment. The preliminary injunction ruling that is the subject of this appeal has therefore now merged with the final judgment. And this appeal has been rendered moot. That is a threat. Did the lower court have jurisdiction to do anything that would wipe out our jurisdiction? Yes, Your Honor. I thought when there's an appeal, the lower court loses jurisdiction to rule on anything that overlaps with an issue on appeal. And here the probability of success on the merits would essentially be the exact same issue as the merits. So how can the lower court even have jurisdiction while it's in our court? Your Honor, when preliminary injunction rulings are appealed, it is often the case that the case continues in the district court, and there may be an order of dismissal that's entered later, and that moots the appeal of the prior interlocutory ruling, and it merges into the final judgment. This happens all the time, and it happened in the Chaparro-Phoebus case that we've cited. It happened in the Freightliner case. So to really emphasize here, the important fact is not the fact of transfer, but the fact of a dismissal that later rendered that interlocutory appeal moot. So the fact that this case was transferred is not the operative event, and that's why this court has to look at this from the lens of the Chaparro-Phoebus case, as well as Freightliner and other cases. And the fact that a final judgment has been entered means that the appeal comes from that final judgment. And of course, that appeal is currently pending in the Ninth Circuit, and the Ninth Circuit has not yet issued its decision, but that's the current state of play here, and that's why this appeal, as it currently stands, is moot, and it should be dismissed. If I understood your position in the Ninth Circuit, it's not that there is no appeal before the Ninth Circuit. It is that there is an appeal from entry of the final judgment, which disposes of the claims for permanent injunctive relief, and that the preliminary injunctive relief issue disappears with the entry of judgment on a dismissal of all claims in the case. Is that correct? That's exactly right, Judge Lynch. Okay. Thank you. So, if you look at the opinion by Judge Turea of my court, how do you distinguish that? Thank you, Your Honor. In the Matrix case, in that decision, the case had not been dismissed, so the rule where a case is live in the district court is that it's true. An appellate court can order the transferor court to enter to request that the transferee court here, the Northern District of California, return the case so that the transferor court may enter a preliminary injunction if that ruling on the preliminary injunction is reversed on appeal. But that assumes that there is a pending case in the transferee court for this court to order back. And here, that simply isn't the case. So, again, the operative fact is the fact of dismissal and entry of final judgment and not the fact of transfer. So, that's why that case doesn't... I'm still puzzled by the Griggs issue. In your own brief, you say the filing of it, is an event of jurisdictional significance. It confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal. So, we have here a filing of a notice of appeal by Ms. Lisbergen's clients to this court. Under Griggs, that divests the district court of any control over aspects of the case involved in appeal, which would include the likelihood of success on the merits. So, why doesn't... Why could the district court in California still do anything on the merits? Well, Your Honor, plaintiffs did file a second motion for a preliminary injunction. So, that is the motion that the district court in California, the Northern District, Judge Chen, decided. So, there was a subsequent filing of another amended complaint and another motion for a preliminary injunction. And that's what was before Judge Chen. So, Judge Chen did not rule on the same motion that Judge Talwani ruled on. Well, but the test you've cited to us is not the same motion. It's the aspects of the case in which the whole doctrine is intended on preventing, once there's an appeal, the lower court from weighing in and mooting in the circuit court an issue. And now you're asking us to rule that's exactly what we should allow the district court to have done here. Well, Your Honor, again, this does happen and it happens wherever there is an interlocutory ruling. But here, this motion that the Northern District ruled on, again, was a different one and based on a different record, wasn't it? That's correct, Your Honor. That's correct. And therefore, the same issue of likelihood of success is not the same. The issue of likelihood of success as to that motion was not the same as the issue before us. That's correct, Your Honor. And again, when this case was transferred, plaintiffs did not appeal the transfer order. The only appeal that is before this court is that of the denial of the first preliminary injunction ruling, the denial of the first preliminary injunction that plaintiffs brought before Judge Talwani. They filed the subsequent preliminary injunction after that and it was denied by Judge Chen and that has merged into the final judgment. So this is a very important threshold issue that means that the court should dismiss this appeal. But even apart from that, I believe that the court, if it were to reach the merits, should affirm the district court's decision denying the preliminary injunction for several reasons, which I can it's your choice. Yes, thank you. And I don't want to repeat the arguments that were made by Ms. Goldenberg. I agree with all of them in the prior appeal. I would just say that again, a very clear national consensus has emerged among the courts on which type of workers falls within one exemption, which is narrow. And it is those workers whose work is part of an integrated interstate trip that's coordinated by the putative employer. And this court said in Wythaka that the court should look at the nature of the business of the putative employer in making that determination. And the work at issue here is worlds away from that at issue in Wythaka and in the Rittman case, the Amflex workers were completing an interstate shipment that was coordinated by Amazon. And that was undisputed. And that's different here. And again, when it comes to line drawing, Judge Kayada asked about that earlier. And I think that the line is clear from all of these cases. And certainly in the Wallace decision, which was written by then Judge Barrett, where the court held that unless the interstate movement of goods is a central part of the class member's job description, then the work does not fall, the class of workers does not fall within section one. And so again, we look not where the goods have been or here where the people have been and whether incidentally they happen to be picked up in a cab or by a friend or use the Uber Lyft app. None of that is coordinated by Uber or Lyft. And Judge Kayada asked about the class of workers and the class of workers here. I think it's undisputed by everyone is rideshare drivers. And that's what the Ninth Circuit looked at. And that's how the Ninth Circuit defined the class of workers, national rideshare drivers in the In re Grice decision. So again, there is a national consensus that has emerged and it's very clear that here the drivers who use the Uber app fall on the side of the cab that were not engaged in interstate commerce in yellow cab and that the Ninth Circuit agreed drivers using the Uber app are not within section one for those reasons. Five minutes remaining. Thank you. I also agree that plaintiff here is not seeking public injunctive relief and therefore that argument is not a basis to avoid arbitration or to in any way nullify the arbitration agreement that plaintiff voluntarily agreed to and did not unanimity on this issue. And the injunction here would upset the status quo, would displace arbitration completely and would be inappropriate for that reason as well. And Judge Talwani was correct and did not abuse her discretion in finally in finding that plaintiff failed to carry his burden to satisfy any of the requirements for an injunction for the extraordinary relief that he seeks here. He presented no evidence whatsoever to any harm to himself or to anyone for that matter and completely failed to meet the requirements for injunctive relief. And that harm is the touchstone of equitable relief and it cannot be excused that he failed to meet that completely. So for all of those reasons, uh, your honors, I, the court should first dismiss the appeal. Then it should affirm the decision of the district court. Thank you. Thank you. And I'm happy to answer any further questions. Hearing none, thank you. Attorney Evangelist, you may at this time mute your device, audio and video. And Attorney Lisseruden, you have a three-minute rebuttal time. Uh, thank you very much. Uh, if I can just touch very quickly on a few points that were just argued. One, the argument that there's been a national consensus that rideshare drivers don't fall under the section one exemption. If the court actually looks at those cases, most of them were decided on, on other grounds, such as the people versus goods distinction or, uh, were not bound by Ythaka as this court is. Um, the Wallace case that was decided by Justice Barrett in the seventh circuit involved food delivery drivers, which is a different situation. While she looked at Ythaka and, and, um, uh, cited Ythaka approvingly, there was a difference, uh, in that court's view regarding delivery of food, um, that is prepared at restaurants. So that the, the food is not traveling interstate is, is essentially what she held because the meals are created at the airport. They are, um, they're still passengers and they're not, and they're not done with their journey until they get home or to their hotel or to their place of business. And the same, um, with the beginning part of their trip. Um, Ms. Evangelist just referred to the N. Ray Grice decision by the ninth circuit. That was a case in which the court simply denied a mandamus petition and held that there was not clearly established law already that was, um, um, contravened by the district court's decision. Um, it wasn't an actual decision on the merits on the usual standard of, um, the, this, uh, this section one exemption, which is now actually before the ninth circuit in the, um, other appeal that is now pending in the Capriol, this case. Um, on the public injunction point, um, Uber has argued that all the other courts had denied the argument that what plaintiffs are seeking here would even constitute public injunctive relief under the California McGill decision. I just wanted to point out that the, um, the Magana and Colopy decisions didn't really analyze it at all, but just, well, Colopy relied on Magana and Magana relied on Clifford. Uh, Ms., uh, I'm sorry, but I thought you just argued to us that you were not seeking public injunctive relief, that you were seeking relief, uh, on behalf of your drivers, uh, because they were irreparably injured, and that the public interest operated in your favor because, uh, the public also would benefit by issuance of the injunction. So, I'm a little confused about whether you were arguing this, uh, was a public injunctive request for relief, or not. I, well, yes. We are arguing that we meet the irreparable injury, both because of harm to the drivers and harm to the public, and we don't need to prove that Massachusetts law represent, recognizes public injunctive relief under McGill in order to make that argument. We satisfy the preliminary injunction requirements. Separately, on the question about whether Uber can block our request for injunctive relief by use of an arbitration clause, that raises our argument that Massachusetts would not allow... Time has expired. Okay, thank you. No, we've got it. Thank you. That helps. Thank you. Okay. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next section of the Court. God save the United States of America and this Honorable Court. Counsel, you may disconnect from the meeting.